# Allen Wilcox v. Village of Manchester Zoning Board of Adjustment

[616 A.2d 1137]

No. 91-466

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed September 4, 1992

*Rodney E. McPhee* of *Abell, Kenlan, Schwiebert & Hall, P.C.*, Rutland, for Plaintiff-Appellant.

*W. Michael Nawrath* of *Whalen & Nawrath*, Manchester Center, for Defendant-Appellee.

**Johnson, J.** Plaintiff appeals from a superior court decision upholding the ruling of the Village of Manchester Zoning Board, which prohibited the subdivision of his property because it would leave an undersized lot, in violation of the Village's minimum-lot-size ordinance. We agree with plaintiff that summary judgment should not have been granted because issues of fact remain as to whether he qualifies for an exception to the minimum-lot-size requirement. We reverse and remand.

Plaintiff's land consists of three parcels, created and conveyed by deed to his parents in 1950. The conveyance was prior to the adoption of the Manchester zoning bylaw, which established a three-acre minimum for the zone in which the parcels are located. Prior to the conveyance to plaintiff's parents, their grantors had sold a lot close to the middle of the property, reserving the property to the east, west and north of the lot sold. Thus, the grantors retained an irregularly shaped lot, which was then conveyed to plaintiff's parents as three separate parcels.

Parcel 1, the eastern-most parcel, consists of about one acre, with a preexisting residence. Parcel 2, the western-most parcel, is a 9.8 acre parcel, roughly rectangular in shape, the eastern boundary of which lies about 260 feet west of parcel 1. The property lying between parcels 1 and 2 is divided into two lots, a northern and a southern lot, both bordered by parcel 2 to the west and by parcel 1 to the east. The southern lot is the property previously sold to another grantee, now owned by the Meadows. The northern lot is parcel 3, a long, narrow corridor 27' 6" wide and 260 feet in length that runs the full width of the Meadows' lot, east to west, and connects parcels 1 and 2. The purpose of parcel 3 is to serve as a drainage ditch for parcel 2.

Parcel 1 is subject to a right-of-way for the benefit of the lot now owned by the Meadows and which runs east-west across the northern section of parcel 1, leading to the Meadows' lot. The portion of parcel 1 located north of the right-of-way is a strip that is contiguous on its western border with parcel 3 for its full 27 feet.

When plaintiff applied for a subdivision permit, the zoning administrator declared that lots 1 and 2 were not separate because they were "affiliated" by parcel 3. The zoning board of adjustment affirmed, and plaintiff sought a declaration in superior court that parcel 1 had not been merged into parcels 2 and 3 and could be separately conveyed. The sole issue before the court on summary judgment was whether parcel 1 was in "individual and separate and non-affiliated ownership" from parcels 2 and 3 within the meaning of the bylaw and 24 V.S.A. § 4406(1), on which the bylaw is based.* The court concluded that there was no factual issue as to whether parcels 1 and 2 were separate, because they were connected by parcel 3. The court held that the right-of-way running through parcel 1 did not interfere with the contiguous nature of parcels 1 and 3 because the parcels still shared a boundary of 27 feet. The court granted summary judgment for the Village, and the present appeal followed.

---

\* Section 3.4.1 of the Village of Manchester zoning bylaw provides in relevant part:

The provisions of this bylaw relating to the Minimum Lot Area and Minimum Lot Width only, as set forth in the applicable subsection, entitled, "Required Lot Area, Width, Yards," shall be waived to permit the construction of an otherwise permitted building or the establishment of an otherwise permitted use on a lot not less than one-eighth acre in area with a minimum width or depth dimension of forty feet, which at the date of the adoption of this bylaw, and continuously thereafter, was in individual and separate and non-affiliated ownership from surrounding properties.

24 V.S.A. § 4406(1) states:

No municipality may adopt zoning regulations which do not provide for the following:

(1) **Existing small lots.** Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of any zoning regulation, including an interim zoning regulation, may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet.

██ Summary judgment is appropriate only if there is "no genuine issue as to any material fact." V.R.C.P. 56(c). The non-moving party is entitled to the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48, 582 A.2d 123, 125 (1990). Plaintiff contends that the right-of-way created a genuine issue of material fact as to whether parcels 1 and 2 were in "individual and separate and non-affiliated ownership." The trial court decided that issue by concluding that contiguity was the only question. Our law indicates otherwise.

██ ██ In *Drumheller v. Shelburne Zoning Board of Adjustment*, 155 Vt. 524, 586 A.2d 1150 (1990), we explained the legislative intent underlying the existing-small-lot language of § 4406(1):

> Lots that are smaller than the minimum lot size requirements are nonconforming uses, allowed only because the use preexists the applicable zoning requirement. A goal of zoning is to phase out such uses.

*Id.* at 529, 586 A.2d at 1152 (emphasis added). It is further clear from the plain language of § 4406(1) that the mere creation of a separate nonconforming lot prior to the effective date of zoning would not confer existing-small-lot protection, where the lot was contiguous to property in affiliated ownership, as in *Drumheller.* The intent of the law is to limit nonconforming uses to uses created prior to the effective date of zoning. The Legislature intended to negate claims of nonconforming uses for contiguous lots in affiliated ownership that are functionally one property.

The Village relies heavily on the "bright line interpretation of the ordinance and statutes" enunciated in *Drumheller.* 155 Vt. at 530, 586 A.2d at 1153. But the holding in *Drumheller* does not support the Village's position. Appellants in that case did not argue that the lots were exempt under the existing-small-lot provision because the lots were noncontiguous, separate, and nonaffiliated. Rather, they simply argued that because two homes were already located on the property, no "development" would take place by redividing the property. *Id.* at 528, 586 A.2d at 1151.

Plaintiff argues that the lots are separate because they are divided by a right-of-way, relying on *Bankers Trust Co. v. Zoning Board of Appeals*, 165 Conn. 625, 633–34, 345 A.2d 544, 549 (1974). In that case, the property owners acquired 2.114 acres of land, including an unimproved road or right-of-way, forty feet in width, which divided the tract. At that time, the zoning regulation called for one-acre residential zoning. Thereafter, the regulations were amended to provide for two-acre zoning. The husband then transferred .93 acres on the west side of the road to his wife. The court found that the right-of-way "effectively served as a thoroughfare for owners of property who had a right to use it." *Id.* at 634, 345 A.2d at 549. "[B]ecause the existence of the forty-foot right-of-way clearly interrupted the contiguity" of the two parcels, the court concluded that the parcels "cannot reasonably be considered a single lot under a generally accepted definition of lot." *Id.*

■■ Although contiguity is a strong indicator that two lots should not be deemed separate within the meaning of § 4406(1), it is not the only factor. See *Bankers Trust*, 165 Conn. at 632, 345 A.2d at 549 ("contiguous land all owned by the same proprietor does not necessarily constitute a single lot"). The reasoning of the *Bankers Trust* case persuades us that a right-of-way which, because of location and function, effectively separates the parcels that it physically connects, so they cannot be used in the ordinary manner as a single "lot," may render those parcels separate for purposes of 24 V.S.A. § 4406(1) and conforming zoning bylaws. Similar reasoning has been applied where lot owners have *sought* to include the area occupied by an alley or right-of-way to achieve minimum lot size. See, e.g., *Sommers v. Mayor of Baltimore*, 215 Md. 1, 7, 135 A.2d 625, 627 (1957) (alley excluded from the computation of lot area); *Loveladies Property Owners Ass'n v. Barnegat City Serv. Co.*, 60 N.J. Super. 491, 500, 159 A.2d 417, 422 (1960) (determination of which area to include in lot depends on the function of each separate part). Accordingly, the question in this case is whether plaintiff, as the owner of three contiguous lots, enjoys the benefits of a single lot or whether the land effectively consists of multiple lots, despite their contiguity.

■■ We caution that the existence of a right-of-way contiguous to and separating two parcels in common ownership will

not automatically render those parcels separate lots. The term "right-of-way" on a deed is traditionally construed as an easement, absent additional descriptive language. *Hutson v. Agricultural Ditch & Reservoir Co.*, 723 P.2d 736, 739 (Colo. 1986). However, a right-of-way could be a well-travelled road, or simply lines on a plan that pose few practical barriers to the enjoyment of the property as a single parcel. Whether a particular right-of-way effectively separates the parcels that it physically connects is a question for the trial court. Thus, the trial court erred in ruling that contiguity always equals unity; we caution in turn that a right-of-way does not always mean separation.

Nor do we adopt plaintiff's argument that the mere creation of a lot with an odd shape—an "L" or a barbell—necessarily means that the two lots are not adjoining as a matter of law. Cf. *Sturges v. Town of Chilmark*, 380 Mass. 246, 261, 402 N.E.2d 1346, 1355 (1980) (two lots that meet only at one point are not adjoining). This also is a question of fact for the trial court. We reaffirm the strong legislative intent to phase out nonconforming uses and expect that our holding will not invite claims of separate-lot status based solely on the configuration of a lot as depicted on a deed.

*Reversed and remanded.*

