**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Stuart L. Richards   }
                                }
                                }     Docket No. 236-12-99 Vtec
                                }
                                }

<u>Decision and Order after Remand</u>

Appellant Stuart L. Richards appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Norwich, granting a permit to Paul Nowicki for the construction of a single-family residence at 84 Elm Street. In the proceedings after the partial remand resulting from the Vermont Supreme Court's decision in <u>In re Appeal of Richards</u>, 13 Vt.L.W. 265 (2002), Appellant is represented by John D. Hansen, Esq.; Appellee-Applicant Paul Nowicki is represented by John C. Candon, Esq. and Laura O'Connor Shepard, Esq.; and the Town of Norwich is represented by Gary R. Wieland, Esq. Sixteen individuals had entered their appearance in the original proceedings as interested parties in opposition to the grant of the permit, but these interested parties did not participate in the proceedings after remand and were removed as parties.

The only issue in the proceedings after remand is whether the parcels of property with the addresses of 76 Elm Street and 84 Elm Street in the Town of Norwich are functionally separated by the right-of-way running to Appellant's property at 82 Elm Street, so that they "cannot be used in the ordinary manner as a single lot" under the analysis in <u>Wilcox v. Town of Manchester</u>, 159 Vt. 193, 197 (1992). <u>Wilcox</u> discussed that the common ownership of two contiguous lots does not necessarily merge them, nor does separation of two contiguous lots by a right-of-way necessarily make them separate lots. Rather, it must be a case-by-case determination on the facts of the particular case.

An evidentiary hearing was held on that issue before Merideth Wright, Environmental Judge, who also took a new site visit alone, by agreement of the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the proposed findings and memoranda, the Court finds and concludes as follows.

Appellee-Applicant's property at 76 Elm Street (also referred to in prior litigation as Parcel 1) is a preexisting undersized parcel that contains an existing old house, remodeled under a zoning permit not at issue in the present case, with frontage on and direct access to Elm Street.

Appellee-Applicant's property at 84 Elm Street (also referred to in prior litigation as Parcel 2) is a conforming lot that formerly had contained a house (demolished in 1967) and now contains the house at issue in the present permit litigation. It was vacant at the time the permit application was made. The 84 Elm Street property has frontage on Elm Street and has access to Elm Street by a

driveway or private road running on its property along the boundary with the 76 Elm Street property. As the other boundary of 84 Elm Street is Blood Brook, and as Elm Street slopes steeply downward from the driveway to Blood Brook, it would not be possible to relocate the driveway to run near the brook boundary of the 84 Elm Street property (even if state laws regarding streams would allow such a relocation).

Appellant's property at 82 Elm Street lies behind the 76 and 84 Elm Street properties and has no frontage on Elm Street. It has access to Elm Street by the right-of-way running on the 84 Elm Street property. The 76 Elm Street property adjoins the right-of-way running along the 84 Elm Street property along the complete length of their common boundary.

The 76 Elm Street property belonged to an unrelated owner in 1943 when the Watermans, who owned the remaining property, created the 82 Elm Street parcel and reserved for themselves the 84 Elm Street property, creating the right-of-way over their 'front' property to the 82 Elm Street 'back' parcel.

In 1967, when the house on the 84 Elm Street property was demolished, the then-owner of the 76 Elm Street parcel (Macdonald) and the then-owner of the 82 Elm Street parcel (Smith) owned the 84 Elm Street parcel in common. They conveyed the 84 Elm Street parcel solely to Macdonald, subject to several conditions, including Macdonald's agreement that she would not convey the 84 Elm Street parcel separately from conveying the 76 Elm Street parcel, without first offering the 84 Elm Street parcel for sale to Smith or her successors in title, and that she could build a new house on the 84 Elm Street parcel. However, she had not done so by the time Appellee-Applicant acquired both parcels, and that deeded right is unrelated to the respective rights of the parties under the zoning regulations.

The right-of-way is described in Appellant's 1984 deed as " a certain right-of-way for every purpose, supposedly dedicated to public use," although the right-of-way remains a private road or driveway and has not been dedicated to the Town.

The right-of-way was the subject of litigation between the parties, which settled it as 20 feet in width, of which an approximately 10-foot-wide driveway is paved, plus a paved backing-up area (also referred to in the evidence as a 'turnaround' ) near Elm Street. Appellant's property has rights to use the paved portion of right-of-way for ingress and egress, plus the right to use the so-called turnaround for " overflow, secondary parking, or ancillary uses." Vehicular access to the rear basement entrance and rear yard of the 76 Elm Street property[1] is much more convenient with access from the right-of-way than through the 8-foot-wide side setback on the other side of the 76 Elm Street house, but access for propane deliveries and moving trucks would be adequate by use of the front parking area and front entrances to the 76 Elm Street house. That is, while occasional use of the right-of-way is convenient for the management and use of the 76 Elm Street parcel, it is not necessary or essential.

The three properties generally slope from the height of land at the 76 Elm Street property down across the 84 Elm Street property towards Blood Brook, an elevation difference of approximately eighteen feet, and also slope down more gently away from Elm Street towards Appellant's property, which is also bounded by Blood Brook. The ground floor of the 76 Elm Street house is

at an elevation well above the elevation of the right-of-way and is supported by an approximately three-foot high stone retaining wall extending back from Elm Street to behind the house. The rear basement door of the house opens out at approximately the same elevation as the right-of-way.

The right-of-way formerly had a 'hump' in it, near the rear of the 76 Elm Street house, that prevented good visibility down to Appellant's end of it for vehicles and pedestrians turning onto it from Elm Street or crossing it from the 76 Elm Street house. Appellee-Applicant had material removed from the right-of-way to minimize this 'hump' and improve visibility, and then repaved the right-of-way so that the driveway remained in the same plan-view location, but at a somewhat lower elevation and more gradual slope. That driveway work was the subject of superior court litigation between the parties that resulted in a consent order governing the location, pavement quality and width, upkeep, future maintenance, and use of the driveway for vehicular traffic and as an easement for a municipal water line.

In the present case, the parties focused their evidence on whether the 76 Elm Street parcel could or could not be used for its intended residential purposes without using the right-of-way on the 84 Elm Street parcel. We find that it can be used without the use of the right-of-way. However, under the Wilcox analysis, the question is not whether the parcels are capable of being used separately, but whether they are incapable of being used together, " in the ordinary manner as a single ' lot,' " due to the existence of the driveway and right-of-way.

Based on the topography of the land, the configuration of the lots, and the allowable potential use of each property, we find that, although the right-of-way is private, these properties are equivalent to those at the end of and flanking the end of a short dead-end village street. While a person capable of walking and of going up and down steps or a slope would be able to cross from the 76 Elm Street parcel onto the 84 Elm Street parcel, or vice-versa, it is not possible to use the two parcels as a single parcel, primarily because the owners of those two parcels cannot block the use of the right-of-way by the owners of the 82 Elm Street parcel. The right-of-way occupies the entire adjacent boundary; that is, it is not possible to cross from the 76 Elm Street parcel onto the 84 Elm Street parcel without crossing the right-of-way. Appellee-Applicant cannot fence across the right-of-way, and cannot block Appellant's access to and from Elm Street. While the 84 Elm Street parcel could have been used as a single lot if it had been in common ownership with Appellant's property, it cannot be used as a single lot in common ownership with the 76 Elm Street lot.

We do not measure the use of the two lots, or of Appellant's lot, by their actual use by any particular resident. Other than for accessory units under 24 V.S.A. § 4406(4)(D)(1), a zoning decision does not depend upon the actual age or infirmity of a particular owner or resident. Rather, we must ascertain the extent of the potential use of Appellant's property and the right-of-way in this zoning district, and therefore the potential for the right-of-way to impede the use of 76 Elm Street and 84 Elm Street together as a single lot[2].

The zoning regulations would allow Appellant's property to be used for a two-family residence, each of which could contain a home occupation and/or a small daycare, and one of which could be used as a small group home. The existence of this right-of-way to a back parcel, and its

potentially more intensive use to serve that back parcel, prevents the two lots from being used in the ordinary manner as a single lot. The 76 Elm Street parcel and the 84 Elm Street parcel have not merged, and may be separately developed.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's pre-existing undersized lot and house at 76 Elm Street parcel did not merge with Appellee-Applicant's then-vacant and conforming lot at 84 Elm Street, and therefore that Appellee-Applicant was entitled to apply for and receive a permit to construct a house on the 84 Elm Street parcel. This decision concludes this appeal.

Done at Barre, Vermont, this 7th day of November, 2003.


_____
Merideth Wright
Environmental Judge


## Footnotes

1. The question of whether an owner of the 76 Elm Street property also has rights to use the right-of-way, and the scope of those rights, is not before this Court for decision in this appeal.

2. We note that this decision specifically does not address whether the 76 Elm Street and 84 Elm Street parcels would have merged if they simply shared or flanked a private right-of-way. Rather, it is the right of the 82 Elm Street parcel also to use that private right-of-way, and the extent of potential uses for the 84 Elm Street parcel, that is persuasive on the facts of the present case.